GOLDSCHMIDT v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. October 15, 1915.)

1. MUNICIPAL CORPORATIONS ☜217—EMPLOYÉS—CIVIL SERVICE RULES.

Civil Service Law (Consol. Laws, c. 7) § 9, declares that all appointments in the classified service shall be for a probationary term, not exceeding the time fixed in the rules. Section 11 provides that the mayor of each city shall appoint and employ suitable persons to prescribe and enforce rules for the classification of offices and employments and for appointments and promotions. Rule 6, § 2, of the municipal civil service commission of the city of New York provides that the person selected shall be duly notified by the appointing officer, and upon accepting and reporting for duty shall receive a certificate of appointment for a probationary period of three months, and that, if his conduct or capacity on probation be unsatisfactory to the appointing officer, the probationer shall be notified in writing that at the end of that period he shall, for that reason, not be retained, and his retention in the service otherwise shall be equivalent to a permanent appointment. *Held* that, in view of the purpose of the statute, which was to make certain the terms of civil service employés, the provision that failure to notify a probationer that he would not be retained should make the appointment permanent, is a valid exercise of the rule-making power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 576, 577, 579, 580; Dec. Dig. ☜217.]

2. SCHOOLS AND SCHOOL DISTRICTS ☜63—BOARD OF EDUCATION—POWERS OF.

The board of education of the city of New York, which is composed of a large number of men and has many of the characteristics of a corporation, cannot delegate to a subcommittee its power of appointing employés; hence the board itself, and no subcommittee, can notify a probationer that his services are unsatisfactory.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 149–160; Dec. Dig. ☜63.]

3. SCHOOLS AND SCHOOL DISTRICTS ☜63—APPOINTMENT OF EMPLOYÉS—RATIFICATION OF AUTHORITY OF AGENT.

In such case, while the board may ratify the act of a subcommittee in dismissing a temporary appointee, its ratification will not relate back to the subcommittee's notice; and hence, if not made within three months after appointment, the appointment becomes permanent, under Civil Service Law, §§ 9, 11, and rule 6, § 2, of the municipal civil service commission of the city of New York.

[Ed. Note.—For other cases, see Schools and School Districts, Cent. Dig. §§ 114, 149–160; Dec. Dig. ☜63.]

Application by Hermann E. Goldschmidt for a writ of mandamus against the Board of Education of the City of New York. Writ issued.

Charles J. Foltz, of New York City (Edward Stetson Griffing, of New York City, of counsel), for applicant.

Frank Polk, Corp. Counsel, of New York City (Chas. McIntyre, Asst. Corp. Counsel, of New York City, of counsel), for board of education.

LEHMAN, J. It appears undisputed that prior to February 24, 1915, the committee on supplies of the board of education appointed the relator "as an accountant, fifth grade, in the bureau of supplies, the appointment to take effect upon his assumption of duty." The

by-laws of the board of education provide that its committee on supplies "shall appoint, subject to confirmation by the board, all clerks and other employés of the board," etc. Pursuant to this by-law the board of education on February 24, 1915, confirmed the action of its committee in appointing the relator, and the relator thereafter, on March 1st, assumed the duties of his position. On May 29th the relator was notified that at a meeting of the committee on supplies it was decided that his employment be terminated at the end of his probationary period of three months on account of unsatisfactory service. On June 23d the action of the committee on supplies "in terminating" the relator's employment and causing notice of its action to be served on the relator was, by resolution of the board of education, "approved and ratified." In the meanwhile the relator had continued to tender his services in the position to which he had been appointed, and had claimed to the board of education that the attempted termination of his employment at the end of his probationary period was void, and he could thereafter be removed only on charges.

[1] Civil Service Law (Consol. Laws, c. 7) § 9, provides that:

"All appointments or employments in the classified service, except those of veterans of the Civil War, honorably discharged from the military or naval service of the United States, shall be for a probationary term not exceeding the time fixed in the rules."

Section 11 of the same law provides that:

"The mayor of each city in this state shall appoint and employ suitable persons to prescribe, amend and enforce rules for the classification of the offices, places and employments in the classified service of such city and for appointments and promotions therein and examinations therefor."

The rules of the municipal civil service commission of the city of New York provide (rule 6, § 2):

"The person selected shall be duly notified by the appointing officer, and upon accepting and reporting for duty shall receive from such officer a certificate of appointment for a probationary period of three months. * * * If his conduct or capacity on probation be unsatisfactory to the appointing officer, the probationer shall be notified in writing that at the end of such period he shall, for that reason, not be retained; his retention in the service otherwise shall be equivalent to permanent appointment."

It is the contention of the relator: (a) That under the provisions of the statute and rules his appointment for a probationary period automatically ripened into a permanent appointment unless his conduct was unsatisfactory to the *appointing officer* and he received notification to that effect; (b) that the appointing officer was the board of education, and that the board of education did not and could not delegate its right as the appointing officer to pass upon his conduct during the probationary period, 'and that therefore the notification that the committee on supplies had by resolution terminated his employment was ineffective; (c) that the action of the board of education in ratifying and approving the action of its committee was of no effect, because at that time the respondent no longer held under a probationary appointment and could be removed only on charges.

The board of education claims that the rule of the civil service commission above quoted is not a valid exercise of its rule-making

power and exceeds the authority given to the commission by statute. Its claim in effect is that the statute provides that all appointments shall be for a probationary period; that the civil service commission has power to pass rules fixing the probationary period, but that it has no power to state what facts should constitute a permanent appointment, and that consequently a person appointed for a probationary period cannot claim that he has been appointed permanently until a new appointment is made.

With this contention I entirely disagree. The statute should be given such interpretation as will carry out the legislative intent. The legislative intent was clearly to give security of tenure after a probationary term. This intent would not be effectuated if a new appointment were required at the end of the probationary period, for the probationer would have no power to compel the making of a permanent appointment, and would remain in office only at sufferance or by private agreement with the appointing officer. Moreover, the statute clearly intends that there shall be only one appointment, which is to ripen into a permanent appointment at the expiration of the probationary term, for it provides that *all* appointments shall be for a probationary term. As pointed out above, the statute expressly gives the civil service commission power to prescribe rules for "appointments" within the classified civil service, and it is entirely within this power to prescribe the method in which the probationary appointment shall ripen into a permanent appointment, provided it does not in any way diminish the power of the appointing officer to discharge the probationer during the probationary period.

[2] The sole question that remains on this application is whether the appointing officer did discharge the relator during the probationary period. The appointing power is undoubtedly the board of education, and not any subcommittee thereof. The board of education is, however, composed of a large body of men, possessing many of the characteristics of a corporation, and, like a corporation, must in many instances perform the details of its work by means of committees or single officers. Such committees or officers can, however, act only for the board of education and by virtue of authority intrusted to them by the board. The board can obviously not divest itself of the power of appointment or removal. It can at most authorize a committee to act for it and in its name. Whether or not the board could authorize a committee to make an absolute appointment is not a question presented upon this motion, and need not be considered by me. It has in the present case conferred upon the committee of supplies power to appoint only "subject to the confirmation" of the board. Under this resolution of the board, the whole board still has a right to determine whether it will or will not confirm the appointment, and the appointment is not complete until the board has acted, and no serious claim can be made that the resolution conferring upon a committee power to appoint subject to confirmation divests the board of any power or duty conferred upon it by law. The appointment of the relator for a probationary period was therefore valid and complete when confirmed by the board of education.

Since, however, the board of education did not and could not actually make the committee of supplies the appointing officer, but could and did only use the committee as an instrumentality in itself making the appointment, it necessarily follows that the board of education is the only body or officer called upon to determine whether the relator's services were satisfactory and authorized to terminate the relator's employment. It follows that the relator's appointment automatically became permanent on June 1st unless the board, acting either at a general meeting or through a duly authorized committee, had before that time found the relator's services unsatisfactory. The resolution giving the committee on supplies the authority to appoint, subject to confirmation, is silent upon any authority to terminate the employment during the probationary period. It seems to me that, if such authority is to be implied, it can be implied only subject to the same limitation, viz., subject to the confirmation of the board.

It appears from the affidavit of the secretary of the board of education that the construction put by the board upon this resolution is that it authorized the committee on supplies to act for it, subject to "later confirmatory action on the part of the board of education," and that this has been the custom since the consolidation of the city of New York. For the purpose of this proceeding I have therefore adopted the practical construction put upon the resolution by the board itself. It follows from that construction that any action of the board of education in determining that it was not satisfied with the relator's work and notifying him that his employment was terminated was not final and complete until the board as a whole had confirmed the action of its committee. In other words, at the end of the probationary period the appointing officer had not finally determined this question.

[3] The law and the rules, however, clearly intend that the appointing power must determine this question during the probationary period. The law does not contemplate leaving the terms upon which an office is to be occupied open to private arrangement, nor does it contemplate that an appointment shall be held suspended in the air. On June 1st the relator was either still in possession of his office or his employment had been legally and finally terminated. While a principal can undoubtedly ordinarily confirm or ratify any act of an agent, yet such confirmation or ratification cannot be held to date back to the time of the agent's act, where the rights of a third party obtained in the meanwhile would be injuriously affected thereby. Under the law the relator, on June 1st, unless previously removed, obtained a right to his office which could be divested only by a removal on charges. He had not previously been removed, because the committee on supplies could terminate his employment only subject to confirmation. If the board of education failed to confirm, then obviously the act of the committee was without effect; yet the board of education claims that its confirmation must be given a retroactive effect, and the relator's position, until such time as it chose to act, was in abeyance. The board of education could not by its own by-laws change the terms upon which a probationer was to hold office. It could not at the end of the

probationary period hold the matter in abeyance and force the probationer to await indefinitely its own pleasure.

Since on June 1st the board of education had attempted to act only through a committee, which had authority to act only subject to confirmation, and on that date the board had not given such confirmation, it follows that on that date the relator's employment had not been terminated as provided by law, and he is entitled to a peremptory writ.